914 F.2d 731
 In the Matter of SULLIVAN CENTRAL PLAZA, I, LTD., Debtor
(Two Cases).
SULLIVAN CENTRAL PLAZA, I, LTD., and John R. Sullivan, Appellants,
v.
BANCBOSTON REAL ESTATE CAPITAL CORPORATION and Dallas
Central Development Corporation, Appellees (Two Cases).
 Nos. 89-7001, 89-7002.
 United States Court of Appeals,
Fifth Circuit.
 Oct. 16, 1990.
 
 Sander L. Esserman, Stutzman & Bromberg, Dallas, Tex., for Sullivan Cent.
 T. Glover Roberts, Robert E. Goodman, Jr., Sheinfeld, Maley & Kay, Dallas, Tex., for John R. Sullivan.
 J. Maxwell Tucker, Winstead, McGuire, Sechrest & Minick, Dallas, Tex., for appellees.
 Appeals from the United States District Court for the Northern District of Texas.
 Before GOLDBERG, GEE, and WILLIAMS, Circuit Judges.
 GEE, Circuit Judge:
 
 
 1
 Appellants, a debtor and an aligned creditor, ask us to decide whether, absent a stay pending appeal, the district court may hear its appeal from an order by the bankruptcy court granting another creditor relief from an automatic stay pursuant to 11 U.S.C. Sec. 362 and its appeal from the withdrawal of subsequent injunctive relief previously granted by the bankruptcy court to the debtor pursuant to 11 U.S.C. Sec. 105 where, in the interim, the other creditor foreclosed and itself bought the property at issue. Solely because we determine that the district court would be unable to grant relief to appellants under the applicable state law in this case, we find both appeals moot.
 
 BACKGROUND
 
 2
 The procedural hydra surrounding this case emerges from and vanishes upon the final disposition of the debtor's major asset, a high rise tower valued at 35 million dollars. Following the debtors' failure to pay the interest installments on a 39 million dollar construction loan secured by the tower, BancBoston, the holder of the note, posted the tower for foreclosure. That same day, the debtor filed its petition for Chapter 11 bankruptcy, which, pursuant to section 362, automatically stayed the foreclosure sale. BancBoston sought relief from the stay. Before ruling, the court rejected the debtor's amended plan for reorganization. Subsequently, upon concluding that the debtor wholly lacked equity in the building, that the debtor's amended plan for reorganization could not be confirmed, and that no prospect for reorganization existed, the bankruptcy court lifted the stay.[1] The debtor sought reconsideration, which the bankruptcy court summarily denied. The debtor filed its notice of appeal and moved for a stay pending appeal. The bankruptcy court denied the stay, and the debtor did not seek a stay from the district court.
 
 
 3
 On the day the debtor filed its appeal, the debtor also filed with the bankruptcy court a Second Amended and Restated Plan for Reorganization and a complaint for emergency injunctive relief against BancBoston under 11 U.S.C. Sec. 105. Following an evidentiary hearing, conducted on the day scheduled for foreclosure, the bankruptcy court found there was a substantial likelihood that the debtor would prevail on the merits of the complaint and that the debtor's second amended reorganization plan would be confirmable. The court issued a temporary restraining order which required the debtor to meet certain financial conditions, including the tender of security for any possible harm to BancBoston.[2] The court later modified the order to permit posting for foreclosure the next month.
 
 
 4
 At an evidentiary hearing on the Section 105 complaint, the court entered a temporary injunction which continued the TRO but placed additional financial requirements on the debtor, including the posting of funding sufficient to meet the first year's obligations under the plan.[3] Later, concluding that the debtor had failed to meet these conditions, the court withdrew this injunction. The debtor sought a stay pending appeal, which both the bankruptcy court and the district court denied. We denied the debtor's request for a writ of mandamus. A foreclosure sale followed, and BancBoston bought the tower.
 
 
 5
 Upon BancBoston's motion, the district court then dismissed both the appeal from the withdrawal of the injunction and the appeal from the lifting of the automatic stay as moot. 106 B.R. 934. Despite the debtor's argument that all parties, including BancBoston as the purchaser of the tower, were before the district court on appeal, the court determined that no remedy existed because Texas does not provide a statutory right of redemption. The debtor appealed this dismissal to us, and it is in this posture that we consider the case.[4]
 
 LIFTING OF THE SECTION 362 STAY
 
 6
 The automatic stay provided by section 362 is in the nature of an automatic injunction. A creditor may seek relief from the stay; and, if appropriate, the court may lift the stay. The debtor may appeal this court action, but to ensure that the collateral will be preserved, must obtain a stay pending appeal. In this case, the debtor failed to do so.[5]
 
 
 7
 Obtaining a stay pending appeal guarantees that the district court will be able to grant adequate relief (i.e.: enjoin the foreclosure). If the debtor fails to obtain a stay, and if the property is sold in the interim, the district court will ordinarily be unable to grant any relief. Accordingly, the appeal will be moot.[6] The mootness doctrine is grounded primarily and originally in the appellate court's inability to fashion relief.[7]
 
 
 8
 While courts also offer the need for finality as additional support for the mootness doctrine, we do not accept BancBoston's contention that this need is the dominant rationale. We recognize the public's interest in expediting and finalizing bankruptcy sales to encourage buyers to purchase the bankrupt's property, to prevent injury to creditors, and to insure that adequate sources of financing remain available. See Matter of Bleaufontaine, 634 F.2d 1383, 1389 n. 10 (5th Cir.1981). In most cases, the court's inability to fashion relief will protect the public's interest. For example, the court will be unable to undo proper foreclosure sales to third parties. See American Grain Ass'n v. Lee Vac Ltd, 630 F.2d 245, 248 (5th Cir.1980).
 
 
 9
 In the few cases in which a remedy is available, the buyer is readily on notice that he is not entitled to rely on the finality of the foreclosure sale. For example, if the debtor has a statutory right of redemption, the buyer knows he may lose the property purchased at a foreclosure sale. We see no reason to limit the scope of adequate relief to a statutory right of redemption. If state law otherwise provides the basis for a remedy, the purchaser is on notice and the appeal is not moot.
 
 
 10
 On this score, the debtor tells us that foreclosures may be reversible under Texas state law. Wrongful foreclosures may be reversible. See Henke v. First Southern Properties, Inc., 586 S.W.2d 617 (Tex.Civ.App.-Waco 1979, writ ref'd, n.r.e.). However, we in no way imply that the improper lifting of the automatic stay by the bankruptcy court itself should constitute grounds for wrongful foreclosure. The parties must turn to the applicable state law to determine the proper grounds for wrongful foreclosure. Absent a stay, a foreclosure sale generally will be authorized. Accordingly, the availability of an action for wrongful foreclosure is inapposite.[8]
 
 
 11
 The debtor incorrectly intimates that a supposed lack of good faith on the part of BancBoston negates the mootness doctrine. Contrary to the debtor's contention, section 363(m) of the bankruptcy code offers no support for this intimation. Section 363(m), the statutory protection applicable to sales or leases by the trustee and authorized by the bankruptcy court, expressly requires good faith before effectively rendering moot an appeal from that court's authorization.[9] Section 362 contains no similar good faith language, and we see no basis for implying it in the section. The mootness rule applied in 362 cases is judicially derived from a fundamental jurisdictional tenet: federal courts are empowered to hear only live cases and controversies. U.S. Const. art. III, section 2.
 
 
 12
 The protection denied the bad faith purchaser in section 363(m) does not deviate from the recognized requirement that a remedy be available. Section 363(m) moots the appeal by removing the remedy in good faith sale/leases. The district court may remedy a bad faith sale or lease because the authority to sell or lease emanated from the bankruptcy code and the bankruptcy court, and the authorization itself was tainted. By its own terms, section 363(m) is inapplicable to a foreclosure sale conducted under state law during the pendency of an appeal from the bankruptcy court. In such a case, state law provides the authority for the foreclosure sale, and the lifting of the automatic stay merely removes an impediment to a sale consummated pursuant to state law. The details of the foreclosure sale do not form the basis of the appeal from the lifting of the automatic stay; and, even if the appeal could be heard, these details would not be properly before the district court. As we stated earlier, the district court cannot fashion a remedy unless the applicable state law provides one. Here, none is provided.
 
 
 13
 Although, in a particularly egregious case, the broad equitable power of the district court might yield a remote remedy even in the absence of a statutory provision--at least when all necessary parties are before the court--this case does not justify the exercise of such powers. The fact that the decisions of the courts below predictably led to the mootness of this appeal is not unusual or deserving of redress. See NCNB Texas National Bank v. Southwold Associates, 909 F.2d 128 (5th Cir.1990). Nor can the bankruptcy judge's alleged abuse of discretion provide the predicate for a broad use of equity here, since this reasoning would require assuming precisely the conclusion that the debtor seeks to establish.
 
 THE WITHDRAWAL OF THE SECTION 105 INJUNCTION
 
 14
 For the reasons stated above, we also hold the appeal from the withdrawal of the section 105 injunction moot. The debtor complains that the bankruptcy court never conducted a "full evidentiary hearing" on the preliminary injunction (despite the entrance of the injunction following a hearing), that the court exceeded its authority by conditioning the injunction upon the posting of certain funds, and that the court denied the debtor a confirmation hearing.[10] The debtor insists that we must carve out an exception to the general mootness rule to hear its self-ascribed due process violations and its allegations that the bankruptcy court exceeded its powers. We disagree.
 
 
 15
 As we have stated, we are concerned with the application of the judicially derived mootness doctrine, premised on the fundamental jurisdictional tenet that federal courts are empowered to hear only live cases and controversies. U.S. Const. art. III, section 2; In re Texaco Inc., 92 B.R. 38, 45 (S.D.N.Y.1988). An appeal is properly dismissed as moot when, as in the case at bar, an appellate court lacks the power to provide an effective remedy for an appellant should it find in his favor on the merits. Mills v. Green, 159 U.S. 651, 653, 16 S.Ct. 132, 133, 40 L.Ed. 293 (1895); In re Commodore Corp., 86 B.R. 564, 569 (N.D.Ind.1988). The mootness doctrine avoids advisory opinions on abstract propositions of law. Hall v. Beals, 396 U.S. 45, 48, 90 S.Ct. 200, 201-02, 24 L.Ed.2d 214 (1969). Deciding the debtor's claims in this case plainly would be advisory on the district court's part. There is no available remedy.
 
 
 16
 Debtor gains no assistance from cases that find an exception to mootness rules codified in the bankruptcy code (e.g.: section 363(m)). In those cases, a party challenged the bankruptcy court's authorization of the "injurious" event, and the code precluded otherwise available remedies. In re Blumer, 66 B.R. 109 (9th Cir.BAP 1986) aff'd 826 F.2d 1069 (9th Cir.1987) (court-approved lien); In re Garrett Rd. Supermarket, Inc., 95 B.R. 902 (E.D.Pa.1989) (lease extension order). Where a statutory rule and constitutional protections conflict, the statutory rule must give way.
 
 
 17
 This case, however, concerns two constitutional doctrines: limits on the power of the appellate court and due process. Were we afraid that similar due process contentions might repeatedly reoccur and never be subject to review because of the mootness doctrine, we might find an exception warranted. But such an exception already exists--issues evading review--and the debtor's case simply does not fall into this category. We see no reason to overbroaden the exception to the mootness rule, which goes to the heart of our jurisdiction.
 
 
 18
 The debtor relies heavily upon Huddleston v. Nelson Bunker Hunt Trust Estate, 109 B.R. 197 (N.D.Tex.1989). Huddleston does not serve as an appropriate guide for this court. There, the court was concerned with applying the generally settled formulation for determining whether effective relief can be granted with respect to an appeal from a confirmed reorganization plan. Under that formulation, courts dismiss an appeal as moot when the plan has been "so substantially consummated that effective judicial relief is no longer available." The court merely declined to apply this general formulation to appeals that raise due process or jurisdictional attacks. The court offered a narrow remedy--declaring the plan non-binding on a party who received no notice--and stressed that the case would not require reversing any transactions previously carried out under the confirmed reorganization plan. In the case at hand, to grant adequate relief the court would be required to reverse the foreclosure transaction, which the court is unable to do.
 
 
 19
 Admittedly our resolution of this appeal effectively allows the bankruptcy judge's orders here to insulate themselves from review; we are not untroubled by this result. However, we reiterate that the debtor could have avoided these difficulties by properly appealing the order lifting the Sec. 362 stay. We also note that Congress could have provided a remedy for this situation in the form of further automatic stays. However, it did not choose to do so. Indeed, Congress has shown its willingness to allow orders under another section of the bankruptcy code (Sec. 363) to become moot on appeal. See supra n. 9. Although Secs. 105 and 362 do not contain such explicit language, it is not our place to disturb the balance Congress has struck between the rights of debtors and creditors.
 
 
 20
 AFFIRMED.
 
 
 
 [1]
 At some point, BancBoston transferred the note and the deed of trust to its affiliate, Dallas Central, allegedly without filing the appropriate paperwork with the court. Both parties treat BancBoston and Dallas Central as a single entity
 
 
 [2]
 The court ordered the debtor to tender $387,000 to be applied to the interest payable to BancBoston for the following two months, but limited these payments of net operating income to the difference between interest at the non-default rate payable to BancBoston for such months and the payments provided. No bond was required
 
 
 [3]
 The court required the debtor to transfer $50,000 to the prior escrow account to fund the difference between the contract rate of interest and the net operating income, to post $186,000 with the clerk of the court to fund the first property tax payment, and to place $4,000,000 cash or marketable securities in a trust account to fund the first years obligations under a plan of reorganization if the plan were confirmed. Additionally, the court instructed the debtor to post additional securities to raise the amount in the account to $9,000,000 prior to the confirmation hearing
 
 
 [4]
 The debtor also asks us to reach all the issues contained in its appeals to the district court. Those issues are not properly before us
 
 
 [5]
 Naturally, we express some concern that the denial of the stay pending appeal effectively deprives the debtor of its appeal. We caution that the bankruptcy court should weigh this factor when ruling on any motion for such a stay. Our concern is tempered by the fact that upon denial of such a stay by the bankruptcy court, a motion for a stay may be filed with the district court. Again, we caution that the district court should weigh the threatened loss of appellate review. Here, the debtor chose not to seek a stay from the district court
 
 
 [6]
 The mootness rule does not prevent the hearing of an appeal where monetary relief is sought. American Grain Assoc. v. Lee Vac. Ltd., 630 F.2d 245, 248 (5th Cir.1980)
 
 
 [7]
 Other circuits agree that the lack of available relief moots an appeal. In re Abingdon Realty Corp., 530 F.2d 588, 590 (4th Cir.1976); County Fairways, Inc. v. Mottaz, 539 F.2d 637, 641 (7th Cir.1976); Markstein v. Massey Assoc., 763 F.2d 1325, 1327 (11th Cir.1985). In a poor effort to convince us otherwise, Debtor itself points to Sixth Circuit authority [which Debtor either entirely misunderstands or flatly mischaracterizes] which on its face states that permitting foreclosure to occur will deprive the debtor of an appeal. In re Madill, 65 B.R. 729 (D.Mont.1986); In re Hardy, 30 B.R. 109 (Bankr.S.D. Ohio 1983) aff'd. 755 F.2d 75 (6th Cir.1985). Here, foreclosure has occurred. We note that some circuits stress finality concerns over the lack of available relief as the primary underpinning for the mootness doctrine. See e.g., In re Onouli-Kona Land Co., 846 F.2d 1170, 1172-73 (9th Cir.1988). With this, we disagree. But our disagreement offers the debtor little comfort in this case: no adequate remedy can be fashioned, and hence the appeal is moot
 
 
 [8]
 Debtor also erroneously suggests that the district court might find the authority to reverse the foreclosure under section 548 of the bankruptcy code. On its face, this section concerns the trustee's power to avoid fraudulent transfers made prior to the filing of bankruptcy proceedings. The case cited by the debtor does nothing more than confirm the obvious: a prior transfer by foreclosure sale may be subject to the trustee's avoidance power as well. In re Hulm, 738 F.2d 323 (8th Cir.1984)
 
 
 [9]
 Section 363(m) moots the appeal by removing the remedy in sales/leases to good faith purchasers/lessees. Section 363(m) reads:
 The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.
 11 U.S.C. Sec. 363(m) (emphasis added)
 
 
 [10]
 Debtor asserts that the court did not explicitly or correctly address the harm an injunction would cause BancBoston. This contention merely states a claim that the court applied the wrong legal standard and does not question the scope of the bankruptcy court's jurisdiction or powers